## J. L. HUGGINS V. C. C. WHITE.

### No. 1136.

**1. Subrogation—Purchase of Judgment by Joint Debtor.**—Where a joint debtor in a judgment makes the final payment thereon and takes a transfer of the judgment to himself, in order to be subrogated to the rights of the judgment creditor it must appear that he intended a purchase of the judgment, and not merely a satisfaction of it.

**2. Venue—Enjoining Sale of Land.**—Where plaintiff's suit is to enjoin a sale of land under execution and judgment to which he is not a party, such suit may be brought in the county where the land lies, instead of the county where the judgment was obtained.

**3. Parties to Suit—Warrantor.**—One who has conveyed land by warranty deed has such interest therein as entitles him to maintain a suit by injunction to restrain a wrongful sale of the land under execution which would cast a cloud on the title of his vendees.

**4. Judgment Lien—Priority of Mortgage.**—A mortgage creditor who takes from his debtor a deed of the mortgaged property in satisfaction of the debt, and at its fair value, takes it clear of a judgment lien against the debtor which attached after the date of the mortgage, but before such conveyance.

**5. Execution Purchaser—Void Sale.**—A bidder at an execution sale can not be required to make good his bid where the sale and execution are void.

APPEAL from Clay. Tried below before Hon. GEORGE E. MILLER.

*W. W. Flood* and *W. G. Eustis*, for appellant.—1. The court was without jurisdiction, as the suit could be maintained only in the District Court of Red River County, where the original judgment was rendered. Machine Works v. Templeton, 18 S. W. Rep., 601; Rev. Stats., art. 1193, sec. 15; Rev. Stats., art. 2880; Seligson v. Collins, 64 Texas, 314; Cook v. Baldridge, 39 Texas, 250.

2. An injunction to stay a sale of real estate under an execution against a third person will not be granted where plaintiff fails to show that he has no remedy at law. Rev. Stats., art. 2891; Purinton v. Davis, 66 Texas, 456; Gillis v. Rosenheimer, 64 Texas, 245; Spencer v. Rosenthal, 58 Texas, 4; Whitman v. Willis, 51 Texas, 426, 429; Hull v. Quest, 2 Posey's U. C., 564; Am. and Eng. Encyc. of Law, 799; High on Injunc., secs. 154, 247, 273, 335, 368.

3. Plaintiff had no such interest in the land as would authorize him to maintain this suit. High on Injunc., sec. 9; Gothard v. Reiley, 14 Texas, 461; Cook v. Caswell, 81 Texas, 678; Willis v. Satterfield, 20 S. W. Rep., 159; Stephens v. Moth, 18 S. W. Rep., 100.

4. Plaintiff could not refuse to take the land and comply with his bid, even if defendant in execution had no title. Rev. Stats., art. 2321; Harle v. Langdon Heirs, 60 Texas, 560; Freem. on Ex., 352, 355; Rorer on Jud. Sales, 960, 980.

5. Payment of a judgment by a surety does not discharge it, but it remains in force for his benefit, and is assigned to him. Rev. Stats., arts. 3662, 3664; Brandt on Surety., 269, 260; Freem. on Judg., 468, 470; 2 Black on Judg., 966; Harris on Subrog., 3, 204, 355, 356, 373, 377, 422; Sheldon on Subrog., 45, 86, 88, 106; 1 Jones on Mort., 874, 881, 883.

*S. H. Hodges*, for appellee.—1. A suit brought to enjoin the sale of land levied upon by virtue of an execution issued upon a judgment rendered in a county other than where the land is located and the sale sought to be made, is properly brought in the county where such land is located, when such suit does not question the validity of the judgment, and the party so bringing the suit is not a party to such judgment. Van-Ratcliff v. Call, 72 Texas, 491; Winnie v. Grayson, 3 Texas, 429.

2. An injunction will be granted when the sale would cast a cloud on the title to land, and the appropriation of the partnership property of an insolvent firm in the payment of a partnership debt to the exclusion of individual creditors will be sustained, when such property is taken at its fair market value. 1 Posey's U. C., 252; Rogers v. Nichols, 20 Texas, 719; De Forest v. Miller, 42 Texas, 37, 38; De Caussey & Anderson v. Bailey & Pond, 57 Texas, 668–670; Washburn v. Bank, 19 Vt., 278; Hubbard v. Curtis, 8 Iowa, 1; Stout v. Fortune, 1 Iowa, 183; Griffith v. Buck, 13 Md., 102; Story Eq. Jur., sec. 676.

3. A party bidding on land at sheriff's sale, and refusing to comply with his bid, can not be sued for the amount of his bid. It is the duty of the sheriff to resell the land, and if the land does not bring as much at the second sale as at the first, the difference may be recovered. Rev. Stats., art. 2321; 2 Freem. on Ex., secs. 301, 313; Rocksell v. Allen, Myers' Fed. Dec., title "Sales," p. 448.

4. Payment by one of the defendants in a judgment, when the judgment does not show that such defendant is a surety, the judgment, and an execution issued on such judgment, is void. Bank v. Daugherty, 81 Texas, 301; Freem. on Judg., secs. 472, 473.

5. A party who has sold land by warranty deed has such an interest in the land as will authorize him to bring suit to enjoin the sale of said land under execution. 18 S. W. Rep., 801; Rogers v. Nichols, 20

Texas, 720; De Forest v. Miller, 42 Texas, 37, 38; De Caussey & Anderson v. Bailey, 57 Texas, 668–670.

TARLTON, CHIEF JUSTICE.—Prior to November 30, 1883, C. C. White, G. W. Barefoot, and J. C. Bryant, as partners, owned 7755 acres of land, in controversy in this suit, lying in Clay County, and off the east side of the Cherokee County school land survey of 17,712 acres, situated in Clay and Wichita Counties.

C. C. White owned a half interest in the tract, the remainder being owned by Barefoot and Bryant, the other members of the firm.    On the day named, White conveyed his one-half interest to Barefoot and Bryant for $4 per acre, retaining a vendor's lien in his deed to secure the deferred payments of the purchase money.    When White sold and conveyed the land to Barefoot & Bryant, they gave him a mortgage on the entire tract to secure the purchase money, and also to secure other debts, the entire amount being $90,000.  The mortgage was properly recorded in Clay County on the 7th day of January, 1884.

On the 22nd day of May, 1885, in the District Court of Red River County, the Red River County Bank, as plaintiff, recovered, in cause number 5120, from John M. Jones, J. L. Huggins, and J. C. Bryant, as defendants, the sum of $9376.29.    The note was signed by these three defendants jointly, and the judgment was had against them as joint principals.    There was nothing in the record showing that J. L. Huggins and J. C. Bryant signed the note as sureties only.    An abstract of this judgment was filed in Clay County on June 9, 1885.

On October 15, 1891, J. L. Huggins filed in cause number 5120, for the first time, a motion setting up the fact that J. L. Huggins and J. C. Bryant were only sureties on the note sued on.    Neither J. M. Jones, at that date deceased, nor his legal representatives nor heirs were made a party to this proceeding.    An order was entered by the court at its —— Term, 1892, directing execution to issue against J. C. Bryant for the benefit of J. L. Huggins.

The judgment in cause number 5120 was paid off and satisfied on and before the 10th day of September, 1887, though this fact was not made to appear upon the records.    On February 10, 1892, execution was issued by the District Court of Red River County in cause number 5120 for the benefit of J. L. Huggins.  It was levied on the land involved, by the sheriff of Clay County, on the 8th day of March, 1892, and on the 5th day of April, 1892, the land was sold by the sheriff and bid in by W. J. Swayne for C. C. White.

Plaintiff in this cause did not know of the judgment of the District Court of Red River County, directing the execution to issue, and he did not know of the execution, until about half an hour before the sale was made by the sheriff of Clay County; and he refused to take the land under the execution sale, or to pay the bid.

On the 8th day of October, 1885, the firm of Barefoot & Bryant had become insolvent; and still owing C. C. White for the purchase money of the land, and for other debts included in the mortgage, the sum of $80,000, then to a great extent past due, Barefoot & Bryant on that day conveyed to C. C. White the land in controversy, at the price of $3.50 per acre, in satisfaction of the purchase money and a large portion of the other indebtedness, amounting in all to $73,276. C. C. White took the land in satisfaction of the debt thus owed him by the firm of Barefoot & Bryant, and the price allowed them for the land was more than it was worth at that time. The land—the partnership property of the insolvent firm of Barefoot & Bryant—was thus conveyed, at a fair price, to C. C. White, in payment of the debt that the firm owed him.

The court, in accordance with the prayer of the plaintiff, perpetuated an injunction previously granted, restraining the defendant from levying upon the land in controversy an execution issued or to be issued out of the District Court of Red River County in cause number 5120, on the judgment referred to; and further, restraining the sheriff from executing a deed conveying the land to J. L. Huggins, and from proceeding in the sale or the readvertisement of the land under execution.

*Opinion.*—The court found as a conclusion of fact—as do we, adopting its conclusion—that the judgment in question was paid off and satisfied on or before the 10th day of September, 1887. As this finding may perhaps be considered as involving a mixed question of law and fact, it is probably due to the appellant that we state the evidence on which the conclusion is founded, to the end that, on an application for a writ of error, he may not be concluded by our finding of fact. The evidence on which this conclusion is founded is as follows:

The witness M. L. Simms, president of the Red River County Bank, testified, that the judgment in this cause has been paid, "stating the payments and the dates thereof as set out in the copy of the execution docket. The payment of $3136.50 was paid to the bank by J. M. Jones in cattle. * * * They were placed in possession of J. L. Huggins, he agreeing to keep them for a specified sum. The cattle were afterwards sold to Huggins by the bank. The judgment was transferred to Huggins by the Red River County Bank, November 18, 1887."

D. W. Cheatham, the cashier of the bank, testified, that "J. L. Huggins proposed to the bank that, if they would turn him over the Jones cattle, and transfer him the judgment, he would give us $5000. The bank accepted the proposition, and Mr. Huggins paid $2000, and afterwards, in November, 1887, he paid the balance, $3000." This was in satisfaction of the judgment of Red River County Bank v. John M. Jones, J. L. Huggins, and J. C. Bryant, in cause 5120. J. L. Huggins does not testify in the case.

Conceding that Huggins will be permitted to occupy the position of a surety with reference to this judgment, it does not follow, we think, that the payment of the amount remaining due on the judgment would necessarily entitle him to subrogation.

The right to subrogation seems, when recognized at all, to depend upon the intention of the debtor in making the payment. Freem. on Judg., sec. 472.

While there was a transfer of the judgment to Mr. Huggins in this case, we are not prepared to say that this fact required the trial court to infer an intention on his part to secure the right of subrogation by making the payment, in view of the fact that he abstained from testifying as to his intention, and in view of the further fact that he made this payment in part consideration, at least, of cattle which Jones, the deceased principal in the judgment, had previously paid to the bank, and that, in the language of the witness Mr. Cheatham, payment was made "in full satisfaction of the judgment."

The question of the intention with which this payment was made was one of fact, to be drawn by the trial court; and his conclusion, to the effect that the payment was made in satisfaction of the judgment, will not be disturbed by us.

In National Bank v. Dougherty, 81 Texas, 301, our Supreme Court held that, where execution was levied upon property of one of the defendants, who, to save the property from sale, paid the judgment and *took a transfer of it*, such payment satisfied the judgment, which would not thereafter support an execution. It follows, that there was no basis for the execution in this case.

Considering the remaining questions presented by appellants, we conclude:

1. The plaintiff was not required, under the allegations of his petition, to seek an injunction in the District Court of Red River County, where the judgment was rendered, instead of in Clay County, where the execution was sought to be enforced. The plaintiff in this case was not a party to the judgment, and the property in which he was interested having been levied upon, he properly claimed that his right should be adjudicated in the court of his domicile, or in the jurisdiction where the land lies. Van-Ratcliff v. Call, 72 Texas, 491.

2. While it appears that the plaintiff had conveyed the land to divers purchasers, it further appears, that he was a warrantor by covenants expressed in the deed; and this fact, we think, would give him such an interest in the land as to justify his maintaining a petition in injunction. It appears from the allegations, we think, that, if the land should be sold under execution, and a sheriff's deed should be made and recorded, his rights would be injuriously affected. A warrantor can enjoin a sale under a judgment which has been paid. High on Injunc., sec. 247.

As the facts existed in parol which showed the payment of this judgment, as did also those which showed that the abstract of the judgment, and the lien thereby apparently created, should be subordinate to the plaintiff's claim, because of the fact that the deed subsequently executed to him was in payment of a partnership debt secured by a mortgage antedating the apparent judgment lien, we further conclude that the enforcement of the execution, and the sheriff's deed following it, would have beclouded the title of the plaintiff's vendees. The allegations showing this effect, therefore, entitled the plaintiff to an injunction.    Roe v. Dailey, 1 Posey's U. C., 247.

This land was taken by the plaintiff from Barefoot & Bryant in payment of the partnership debt due to him; and had the defendant's purported judgment constituted a valid claim against Bryant, the appellant would not have been entitled to assert this claim until the plaintiff's demand had been satisfied; and as the evidence shows that the fair value of the land was not sufficient to satisfy the demand of the plaintiff, it would appear that the defendant Huggins would have had no interest in the property.

As all these facts existed dehors the record, we think that the right to the injunction properly obtained in this case.    Rogers v. Nichols, 20 Texas, 719.

3. We do not think that the plaintiff, White, could be held liable to the defendant, Huggins, for the failure to pay the bid upon the land sold by the sheriff.   Our statutes, we think, do not contemplate that a bidder shall be required to make good a bid upon a void sale and a void execution.

We have treated the abstract of the judgment in this case as if it were formal; and it is therefore not necessary to consider appellant's fifth and seventh assignments of error, complaining of the court's conclusion that the abstract was not so recorded as to fix a lien.

We have also found it unnecessary to pass upon the correctness of the court's conclusions, to the effect that the motion of J. L. Huggins in the District Court of Red River County was without authority of law.

4. The court properly overruled the objection to the admission in evidence of the several deeds referred to in the eighth assignment of error as in the plaintiff's chain of title.   We do not regard the plaintiff's petition in injunction, and the allegations therein, as constituting such special pleading of his title as to preclude him from introducing these instruments in evidence.

The judgment is affirmed.

*Affirmed.*

Delivered June 20, 1894.

Motion for rehearing denied; and writ of error refused by the Supreme Court.